WHIPPLE, C.J.
| pThis is an appeal from a judgment maintaining one defendant’s peremptory exception raising the objection of no cause of action and dismissing plaintiffs suit against that defendant with prejudice. For the following reasons, we reverse and remand.
FACTS AND PROCEDURAL HISTORY
On October 9, 2008, Levi Robertson filed a “Petition for Damages” against defendants, Sun Life Financial, Sun Life Assurance Company of Canada, and/or Sun Life Administrators (U.S.), Inc. (collectively referred to as “Sun Life”); Wachovia Bank, N.A. (“Wachovia Bank”); Capital One Bank, N.A. (“Capital One”); and Matthew Pizzolato. In his original and first amended petitions, Robertson alleged that he, an unlearned and trusting offshore worker, was deceived into transferring his entire lifetime retirement savings from his company trust to one managed by defendant Pizzolato. Additionally, Robertson alleged that Pizzolato then placed Robertson’s money into an account in Robertson’s name with Sun Life, which, in turn, had an account in Wachovia Bank. According to Robertson’s allegations, Pizzolato was engaged in a massive fraudulent scheme to embezzle defendants’ funds and those of *475 many others, “to the tune of many millions of dollars.”
Robertson further alleged that defendant Sun Life issued a check dated October 13, 2005, in the amount of $99,999.99, which was drawn on defendant -Wachovia Bank and made payable to Robertson. According to Robertson, defendant Pizzo-lato gained possession of the check and forged Robertson’s signature on the instrument. Robertson further alleged that, in turn, defendant' Capital One cashed.the check over a forged endorsement; Wacho-via Bank paid the sum of the forged check without verifying .the .^endorsement; and Sun Life withdrew $99,999.99 from Robertson’s account based on the negotiation of the forged instrument: According to Robertson’s allegations, Sun Life withdrew the funds from his account without his authority or knowledge and through this negligence allowed defendant Pizzolato to gain possession of the check and to wrongfully negotiate it. Robertson further averred that he was not aware that the check, which was attached to the petition as an exhibit, was issued or cashed until approximately July 8, 2008. Thus, Robertson asserted a negligence claim against Sun Life.[1]
In response to Robertson’s suit, Sun Life filed a peremptory exception raising the objection of prescription, contending that Robertson’s negligence claim against it was a delictual action, subject to a liber-ative prescription of one year. LSA-C.C. art. 3492. Sun Life further asserted that the incident giving rise to the plaims against it occurred on October 13, 2005, the date on which it issued the $99,999.99 check, and that just two days later, it mailed a letter to Robertson, informing him that a transfer in that amount was forwarded to him “with regard to your recent request to transfer funds from your contract,” such that Robertson had “actual knowledge of his alleged injury” as early as October 15, 2005. Additionally, Sun Life noted that on August 17, 2006, it sent Robertson a Keyport Index Multipoint Anniversary Report, reflecting withdrawals in the amount of $209,999.98, an amount equal,to three partial withdrawals that had been made, including the $99,999.99 withdrawal at issue. . Accordingly, Sun Life asserted that by August 17, 2006, Robertson had been informed of the withdrawal by letter Land had received an annual statement evidencing the withdrawal, thereby rendering the doctrine of contra non valentem inapplicable.[2] Thus, Sun Life contended that Robertson’s negligence claim filed against Sun Life on October 9, 2008, almost three years after receiving a letter from Sun Life advising of the transfer and over two years after it provided Robertson with an . annual statement putting him on notice that withdrawals had been made, was prescribed. Ultimately, by judgment dated April 9, 2012, the trial court maintained Sun Life’s exception of prescription and dismissed Robertson’s tort claims against it with prejudice.
, Meanwhile, however, on March 22, 2012, prior to the dismissal of his tort claims against Sun Life, Robertson filed a third amending and supplemental petition, set *476 ting forth a breach of contract claim against Sun Life.[3] Specifically, Robertson contended that Sun Life had entered into a contract with Robertson on July 15, 2005, for the issuance of a ten-year annuity, which, in exchange for an initial payment by Robertson, would provide Robertson with a steady return and secure investment of his retirement proceeds. Robertson further averred that Sun Life breached the contract by “recklessly, wantonly, and carelessly, failing to secure and care for plaintiffs investment through the use of normal industry standards such as verification and authentication of any and all withdrawals, use of certified mail, use of wire transfers, and confirmation of receipt of funds subsequent to payments being tendered....”
In response to Robertson’s third amending and supplemental petition, |BSun life filed peremptory exceptions of no cause of action and prescription. Sun Life contended that the third amending and supplemental petition failed to state a cause of action in contract against it because the allegations therein asserted only delictual liability and that Robertson could not identify any provision of the contract that Sun Life allegedly breached. Thus, Sun Life contended that to the extent that Robertson purported to assert a cause of action for “tortious breach of contract,” the third amending and supplemental petition failed to state a cause of action against it. Additionally, Sun Life averred that because the amending petition alleged only delictual liability against Sun Life, Robertson’s claim against it was prescribed.
At the hearing on the exceptions, counsel for Sun Life asserted that, in his third amending and supplemental petition, Robertson had “asserted a vague claim for [tortious] breach of contract, which is not a claim that is recognized under Louisiana law.” The trial court agreed with counsel for Sun Life that Robertson had not stated a cause of action, stating that it did not “see it as a contract issue.” Accordingly, by judgment dated October 9, 2012, the trial court maintained Sun Life’s exception of no cause of action and dismissed with prejudice Robertson’s claims set forth in the third amending and supplemental petition.[4]
From this judgment, Robertson appeals.
EXCEPTION OF NO CAUSE OF ACTION
A cause of action, for purposes of the peremptory exception, is defined as the operative facts that give rise to the plaintiffs right to judicially assert the action against the defendant. Thus, an exception of no cause of action questions whether the law extends a remedy against the | fidefenant to anyone undet the factual allegations of the petition. City of Denham Springs v. Perkins, 2008-1937 (La.App. 1st Cir.3/27/09), 10 So.3d 311, 321, writ denied, 2009-0871 (La.5/13/09), 8 So.3d 568.
No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. LSA-C.C.P. art. 931. The exception is triable on the face of the pleadings, and for purposes of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. Charming Charlie, Inc. v. Perkins Rowe Associates, L.L.C., 2011-2254 (La.App. 1st *477 Cir.7/10/12), 97 So.3d 595, 597. If the petition alleges- sufficient facts to establish a cause of action cognizable in law, the exception raising the objection of no cause of action must fail. Moreover, a petition should not be dismissed for ¡failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in . support of any claim which would entitle him to relief. City of Denham Springs, 10 So.3d at 321.
Because the exception of no cause of action raises a question of law and the trial court’s decision is based solely on the sufficiency of the petition, the appellate court conducts a de novo review. The pertinent question is whether, in the light most favorable to the plaintiff, the petition states any valid cause of action for relief. Charming Charlie, Inc., 97 So.3d at 597. On review, any reasonable doubt concerning the sufficiency of- the petition must be resolved in favor of finding that a cause of action has been stated. City of Denham Springs, 10 So.3d at 321.
DISCUSSION
As detailed above, through his petitions, Robertson averred that he entered into a ten-year annuity contract with Sun Life, that Sun Life issued a check in the amount of $99,999.99 without his permission or authorization, Land that Sun Life then withdrew $99,999.99 from his annuity account without his authority or knowledge. Moreover, in his third amending and supplemental petition, Robertson specifically alleged a claim against Sun Life for breach of contract, as follows:
2.
Defendant [Sun Life] did enter into a contract with Levi E. Robertson on or about July 15, 2005, for the issuance of a Ten (10) year annuity that in exchange for the initial payment by Robertson, would provide plaintiff with a steady return and secure investment of his retirement proceeds.
3.
Defendant and Plaintiff did perfect the contract, by the reciprocal tendering of payment and tendering of the annuity contract by defendant on or about July 27,2005.
4.
Defendant, Sun Life, did breach said contract by recklessly, wantonly, and carelessly, faffing to secure and care for plaintiffs investment through the use of normal industry standards such as verification and authentication of any and all withdrawals, use of certified mail, use of wire transfers, and confirmation of receipt of funds subsequent to payments being tendered by defendant.
5.
Because of defendant’s failure to use standard industry protocols, plaintiff suffered the-loss of $99,999.99 in funds through a fraudulent- transfer overlooked by defendant despite prior attempts acknowledged by defendant, of parties attempting to transfer funds from plaintiffs investment. (R. 95-96).
“A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished,” LSA-C.C. art. 1906. At the time the annuity contract at issue was entered into, LSA-C.C. art. 2793 (amended and reenacted as LSA-C'.C. art. 2778 by Acts'2012, No. 258) provided that “[t]he contract of annuity is that by which one party delivers to another a sum of money, and agrees not to reclaim it so long as the receiver | ¿pays the rent agreed upon.”.[5] Additionally, Title 22 *478 of the Revised Statutes, which comprises the Insurance Code, defines an annuity contract as “[a] contract sold by insurance companies that pays an income benefit for the life of a person, for the lives of two or more persons, or for a specified period of time, or a contract that may provide for a series of payments to be made or received at regular intervals at the direction of the contract holder.” LSA-R.S. 22:47(Í7) (renumbered from LSA-R.S. 22:6 by Acts 2008, No. 415, § 1, effective January 1, 2009).
Thus, with regard to an annuity contract, upon payment of a sum of money by a party, the issuer of the annuity contract incurs an obligation for the payment of benefits as agreed upon, authorized or directed by that' party. See LSA-R.S. 22:47(17) & LSA-C.C. art. 2793 (prior to its amendment and reenactment by Acts 2012, No. 258); also see generally Succession of Rabouin, 201 La. 227, 232-235, 9 So.2d 529, 530-53 (1942). Accordingly, where Robertson averred in his petitions that Sun Life made payments from his annuity account without his authorization or permission, he averred' that Sun Life acted in contravention of its obligations under-the annuity contract, thus alleging a cause of action for breach of the annuity contract.
With regard to Sun Life’s claim that Robertson has not pointed to a specific provision of the annuity contract that was allegedly breached by its payment of sums not authorized by Robertson, at the outset, we note that payment of benefits as directed by the contract owner is the very basis of an [¡¡annuity contract as defined in LSA-R.S. 22:47(17).[6] Moreover, even if it could be argued that no particular provision of the annuity contract, which was not attached to the petitions and thus cannot be considered in ruling on this exception of no cause of action, set forth this obligation, LSA-C.C. art. 2054 provides as. follows:
When-the parties máde no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express-provisions of the contract, but also to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose.
(Emphasis added). Indeed, morecontrac-tual promises are probably implicit rather than explicit because of the impracticality, if not impossibility, of describing every variable the parties will encounter in the course of a contractual relationship. An implied contractual obligation arises just as much ex contractu as an explicit one. Certain Underwriters at Lloyd’s, London v. Sea-Lar Management, Inc., 2000-1512 (La.App. 4th Cir.5/9/01), 787 So.2d 1069, 1076.
By definition of an annuity contract, payments are made as directed by the contract holder. LSA-R.S. 22:47(17). That direction or authorization is' obtained either through the initial direction or authorization as set forth in the contract itself or through some later-granted authorization. Thus, implicit in an annuity contract is the obligation on the part of the insurance company to ascertain' that the authorization allegedly given is in fact val *479 id and not a forgery. Accordingly, by its very nature, an allegation of a payment of a sum without the authorization of the annuitant is an allegation of an action in contravention of the cause of the contract and constitutes an | ^allegation of breach of the annuity contract. See generally Prestridge v. Bank of Jena, 05-545 (La.App. 3rd Cir.3/8/06), 924 So.2d 1266, 1280, writ denied, 2006-0836 (La.6/2/06), 929 So.2d 1261 (A banking procedure that does not protect the customer against fraudulent instruments violates the contractual obligation between the bank and its customer, and when a bank pays on a forged instrument, it breaches its contract with the depositor).
Finally, with regard to Sun Life’s contention that the allegations of its breach are simply allegations of negligence and, thus, do not state a cause of action for breach of contract, we note that in any case involving an obligation, liability must result from a breach of duty, whether the duty arises out of the undertakings of the parties, from their voluntary acts, by operation of law, or otherwise. It is entirely possible that the same duty might have more than one source, as in the case of the negligent breach of a contractual obligation, in which case a cause of action arises from both the breach and the negligence. Gray & Company, Inc. v. Ranger Insurance Company, 292 So.2d 829, 830 (La.App. 1st Cir.1974); see also United Gas Pipe Line Company v. Cargill, Inc., 612 So.2d 783, 785-786 (La.App. 1st Cir.1992)(the same acts or omissions may constitute breach of both general duties and contractual duties and may give rise to both actions in tort and actions in contract).
The nature of the duty breached determines whether the action is in tort or in contract. The classic distinction between damages ex contractu and damages ex delicto is that the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a, general duty owed to all persons. Naquin v. Bollinger Shipyards, Inc., 2011-1217 (La.App. 1st Cir.9/7/12), 102 So.3d 875, 878, writs denied, 2012-2676, 2012-2754 (La.2/8/13), 108 So.3d 87, 93. Sun Life’s duty to make payments as directed and authorized by Robertson and any related, even if implied, duty to ensure that an alleged authorization from Robertson to make payments is in fact valid, clearly arise from, and were assumed by Sun Life in, the annuity contract entered into between the parties, rather than some general duty. See generally Certain Underwriters at Lloyd’s, London, 787 So.2d at 1076-1077 (breach of a special duty implied in a contract gives rise to a claim for breach of contract).
In the case of negligent breach of a contractual obligation, causes of action lie for both the breach of contract and the negligence. Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d 318, 322 (La.1993); Certain Underwriters at Lloyd’s, London, 787 So.2d at 1075. The mere fact that Robertson used descriptive terms such as “recklessly, wantonly, and carelessly” to describe the alleged breach,will not defeat his cause of action for breach of the annuity contract. Accordingly, based on our de novo review, we must conclude that the trial court erred in finding that Robertson had failed to state a valid cause of action against Sun Life for breach of the annuity contract.
CONCLUSION
For the above and foregoing reasons, the trial court’s Óctober 9, 2012 judgment, maintaining Sun Life’s exception of no cause of action and dismissing with prejudice Robertson’s breach-of-contract claims *480 against it, is hereby reversed. This matter is remanded for further proceedings in accordance with the views expressed herein. Costs of this appeal are assessed against defendant, Sun Life Assurance Company of Canada (U.S.).
REVERSED AND REMANDED.

. Robertson's claims against Capital One for conversion of the instrument, LSA-R.S. 10:3-420(a)(iii), were ultimately dismissed as prescribed. This court upheld the dismissal of Robertson’s suit against Capital One. Robertson v. Sun Life Financial, 2011-0172, p. 9, 2011 WL 3558170 (La.App. 1st Cir.6/10/11) (unpublished).

. In support of its exception, Sun Life filed twenty-four exhibits, including copies of the October 15, 2005 letter and the August 17, 2006 Keyport Index Multipoint Anniversary Report.

. Apparently, Robertson , had previously filed a second amended petition; however, that petition is not in the record on appeal. See Robertson, 2011-0172 at p. 4, 2011 WL 3558170 (unpublished).

, The judgment was silent as to the exception of prescription.

. Louisiana Civii Code article 2778, added by Acts 2012, No. 258, § 1, effective January 1, 2013, now provides &at “[a]n annuity contract is an agreement by which a party deliv *478 ers a thing to another who binds himself to make periodic payments to a designated recipient. .The recipient’s right to these pay- . ments is-called an annuity.”

. To the extent that Sun Life attempts to rely upon discovery responses in support of this argument on appeal, we again note that the peremptory exception of no cause of action is triable on the face of the pleadings) and evidence may not be introduced to support the exception. Charming Charlie, Inc., 97 So.3d at 597.